UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HELENE E. HAGENAH, )
 )
    Plaintiff )
 )
    v. )
 ) Civil Action No. 3:16-cv-30141-KAR
 )
BERKSHIRE COUNTY ARC, INC., )
ET AL., )
 )
    Defendants )

MEMORANDUM OF DECISION AND ORDER REGARDING PLAINTIFF'S MOTION FOR
LEAVE TO FILE A SECOND AMENDED COMPLAINT
(Dkt. No. 44)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

On December 5, 2016, Plaintiff Helene E. Hagenah ("Plaintiff") filed an amended complaint against Defendants Berkshire County ARC, Inc. ("BCARC"), and BCARC officers and employees, Kenneth W. Singer, Maryann T. Hyatt, Bernard C. Melski, Megan B. Anello, and Angela Buchauer (collectively "Defendants"), arising from Plaintiff's agreement with BCARC to provide foster care services to two disabled adults and BCARC's termination of Plaintiff's services (Dkt. No. 6). Plaintiff asserted the following causes of action in her amended complaint: interference and retaliation in violation of Titles III and V of the Americans with Disabilities Act ("ADA"); discrimination and retaliation under Mass. Gen. Laws ch. 151B, §§ 4, 4(A), and 5 ("Chapter 151B"); breach of contract; breach of the implied covenant of good faith and fair dealing; misrepresentation; violations of Title VII of the Civil Rights Act of 1964; violations of the Rehabilitation Act of 1973; and violations of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11I (Dkt. No. 6).

1

Presently before the court is Plaintiff's motion for leave to file a second amended complaint (Dkt. No. 44). Plaintiff seeks to amend the complaint by adding the following three claims: "intracorporate conspiracy to deprive rights under Title VII of the Civil Rights Act of 1964 and in deprivation of Plaintiff's rights under the 14th Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1985(3);" "intracorporate conspiracy to deprive rights under the Anti-retaliation provisions of the . . . ADA and in deprivation of Plaintiff's rights under the 14th Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1985(3);" and "BCARC-Defendants' vicarious liability for civil conspiracy" (Dkt. No. 44-1). Defendants oppose Plaintiff's motion on three grounds: (1) the motion to amend was filed late; (2) the conspiracy amendments are futile; and (3) the amendments are barred by the statute of limitations (Dkt. No. 46). Plaintiff has responded to Defendants' opposition (Dkt. No. 49).

The parties have consented to this court's jurisdiction (Dkt. No. 26). *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. After hearing the parties' arguments on November 15, 2017, the court DENIES Plaintiff's motion for leave to file a second amended complaint for the reasons set forth below.

II.   BACKGROUND[1]

Because Defendants oppose Plaintiff's motion to amend "on the grounds including futility, the 'proposed amendment "is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).""" *Perry v. Rose*, Civil Action No.10-10769-JGD, 2012 WL

---

[1] The relevant facts are drawn from the proposed second amended complaint, Dkt. No. 44-1, and Plaintiff's 120 paragraph affidavit, Dkt. No. 44-2, which is incorporated by reference into the second amended complaint, and appended materials, which are sufficiently referenced in the second amended complaint. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Plaintiff states that the same supporting affidavit was filed with her amended complaint in December 2016 (Dkt. No. 44 at ¶ 12). *See* Dkt. Nos. 6, 6-1.

3903475, at *1 (D. Mass. Sept. 6, 2012) (quoting *Transwitch Corp. v. Galazar Networks, Inc.,* 377 F. Supp. 2d 284, 290 (D. Mass. 2005)). Under this standard, "[t]he court must accept as true all well-pleaded facts set forth in the proposed amended complaint, and give the plaintiff the benefit of all reasonable inferences." *Id.* (citing *Transwitch Corp.*, 377 F. Supp. 2d at 294). *See Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999). Applying this standard to the instant case, the relevant facts are as follows.

BCARC is a nonprofit agency that provides services to disabled individuals (Dkt. Nos. 44-2 ¶ 39; 44-5; 44-8 at 3, 4). At the time of the events that form the basis of the amended complaint and the proposed second amended complaint, the individual Defendants held the following positions with BCARC: Kenneth W. Singer was President, CEO, and Executive Director; Maryann T. Hyatt was Vice President of Community, Day, and Clinical Services; Bernard C. Melski was Co-Director of Residential Services; Megan B. Anello was an Adult Family Care Case Manager and Family Advocate; and Angela Buchauer was a registered nurse (Dkt. No. 44-1 ¶¶ 21-25).

On May 15, 2014, BCARC approved Plaintiff to be an Adult Family Care ("AFC") program caregiver for two developmentally and physically disabled adults ("participants"), F.L. and L.W., who would reside in her home (Dkt. Nos. 44-2 ¶¶ 5, 39, 42; 44-8 at 3, 4). BCARC administered the AFC program for MassHealth, the state agency that paid participating caregivers a per diem rate for services rendered to eligible MassHealth members based on the level of care they required (Dkt. No. 44-8 at 2). Because Level II participants required more intensive care than Level I participants, AFC providers received a higher per diem rate for Level II participants (*id.*). Both adults who resided with Plaintiff were designated Level I participants (*id.* at 3, 4).

3

On May 29, 2014, Plaintiff, F.L., L.W., and Defendant Anello executed an Adult Foster Participant and Caregiver Agreement ("Contract # 1"), which stated the responsibilities of Plaintiff, BCARC, and the participants (Dkt. No. 44-9 at 2-4). As the caregiver, Plaintiff's charges included, but were not limited to: maintaining a safe residence that complied with all eligibility criteria; providing twenty-four hour supervision of the participants; supplying the participants with a "clean attractive room," fresh linens at least once a week, three nutritionally balanced meals daily, and snacks; supervising and assisting the participants with activities of daily living; arranging or providing the participants' transportation; and supervising health-related activities, such as reminding the participants to take their medication, refilling their medication on time, and assisting with their transportation to physicians' offices (*id.* at 3). BCARC's responsibilities included: visiting the participants monthly "to monitor health status, safety, and satisfaction with the placement;" checking on Plaintiff's performance of her responsibilities, ability to care for the participants, and satisfaction with the placements; annually assessing Plaintiff's home for "safety and comfort standards;" and developing, implementing, and updating, when necessary, a plan of care for each participant and including Plaintiff in the process (*id.* at 2). Each participant was responsible for, among other things, paying Plaintiff his or her share of the cost of room and board at the beginning of each month (*id.* at 3).

Like the amended complaint, the proposed second amended complaint alleges various federal and state claims of discrimination based on Plaintiff's gender and advocacy for F.L. and L.W., plus contract-related claims. Mainly, Plaintiff alleges that Defendants retaliated against her for exercising rights protected by the ADA and Chapter 151B or for assisting the participants in exercising their rights under the laws, and for refusing to sign a second contract ("Contract # 2") in August 2014 (Dkt. Nos. 44-1 ¶¶ 28, 29; 44-2 ¶¶ 4, 12, 19, 43, 60). Plaintiff claims that her

4

advocacy to BCARC and the Massachusetts Department of Developmental Services ("DDS") on behalf of F.L. and L.W. included seeking "changes" or "improvements" in F.L.'s and L.W.'s employment, day rehabilitation, and activity programs and additional services (Dkt. No. 44-2 ¶¶ 6, 7, 42, 43, 45, 47). She also sought behavioral counseling and treatment for the participants and a "*Rogers*"[2] attorney for medication determination (*id.* ¶¶ 46, 52, 57, 115). In addition, Plaintiff recites a litany of ways in which she assisted F.L. and L.W. in protecting and enforcing their rights including: advocating for "reasonable accommodations to [their] respective disabilities," "timely delivery" of appropriate services and care and respect for their privacy; bringing acts of discrimination and abuse to the attention of state and federal agencies, including DDS, the Massachusetts Commission Against Discrimination ("MCAD"), and the Equal Employment Opportunity Commission ("EEOC"); assisting F.L. and L.W. in appealing determinations made in their care plans and individual service plans; and affording them an opportunity to consult with legal counsel (*id.* ¶¶ 8, 44, 48, 50, 55, 56, 58, 60).

Plaintiff alleges that Defendants presented her with Contract # 2 on or about August 5, 2014 in retaliation for her "proper," "effective," and "steadfast" advocacy on behalf of F.L. and L.W. (Dkt. Nos. 44-2 ¶¶ 65, 66; 44-11). Plaintiff claims that Contract # 2 -- which significantly differed from Contract # 1 and which she refused to sign -- eliminated her rights as well as those of F.L. and L.W. by permitting home visits "with or without notice," releasing BCARC from liability for specific losses, establishing her status as an independent contractor, permitting BCARC to terminate the contract "with or without cause, any time, in its sole discretion," and

---

[2] "[I]f a patient is declared incompetent, a court must make the original substituted judgment treatment decision and should approve a substituted judgment treatment plan." *Rogers v. Comm'r of the Dep't of Mental Health*, 458 N.E.2d 308, 318 (Mass. 1983).

limiting commencement of any legal action under the contract to either the Central Berkshire District Court or the Berkshire Superior Court (Dkt. Nos. 44-2 ¶¶ 12, 13, 61, 67, 71; 44-11 at 4-5).

Plaintiff alleges that her refusal to sign Contract # 2 spurred Defendants' further acts of retaliation, threats, intimidation, and coercion (Dkt. No. 44-2 ¶12). Specifically, Defendant Anello's August 11, 2014 e-mail message indicated that BCARC "was unable to begin issuing . . . checks" until Plaintiff signed Contract # 2 (Dkt. Nos. 44-2 ¶¶ 70, 72; 44-12 at 9). Plaintiff alleges that, in fact, payments were withheld until her attorney contacted Defendants regarding the "egregious, rights violating terms" of Contract # 2 (Dkt. No. 44-2 ¶ 62). Thereafter, Defendants purportedly delayed making payments to Plaintiff, withheld F.L.'s and L.W.'s stipends, which they used to pay Plaintiff for their room and board, "intentionally" incorrectly classified F.L.'s and L.W.'s disabilities as Level I resulting in Plaintiff being underpaid, and made false reports to MassHealth and DDS including allegations that Plaintiff provided subpar care to F.L. and L.W. and that she failed to pay the real estate taxes on her home (*id.* ¶¶ 11, 12, 25, 32, 33, 63, 72, 74). Plaintiff further alleges that Defendants disqualified her home as an AFC placement for L.W. based on the alleged danger posed by a railing on a balcony and stairway, which was one-half inch lower than the building code requirements and which MassHealth and DDS previously had approved (*id.* ¶¶ 25, 31, 33).

Plaintiff maintains that Defendants' acts of retribution culminated in them terminating F.L.'s and L.W.'s occupancy of Plaintiff's home thereby stopping payments to Plaintiff and ending her role as an AFC provider (*id.* ¶¶ 25, 33, 101-03). Defendants allegedly instigated F.L.'s departure from Plaintiff's home on September 24, 2014 by telling him that he would not have to work or attend a day program and could just "'hang out'" and go fishing every day (Dkt.

Nos. 44-2 ¶¶ 5, 101, 102, 115; 44-21 at 5). Plaintiff claims that these representations "encouraged and enabled" F.L.'s disruptive and threatening behavior that resulted in F.L. asking to move out "more than eight times" in one night (*id.* ¶¶ 99, 101-03). Plaintiff further alleges that after F.L. moved from her home, Defendants ignored his requests to move back, threatened to stop caring for him if he contacted Plaintiff or his attorney, and "forced [him] to sign papers" (*id.* ¶¶ 5, 97, 104, 111, 112, 115).

On Friday, October 17, 2014, Defendant Hyatt notified Plaintiff of a meeting scheduled for Monday, October 20, 2014 to discuss Plaintiff's continued role as the AFC provider for L.W. as well as the "appropriateness" of Plaintiff's home as L.W.'s placement based on MassHealth's determination that the height of a railing failed to comply with its safety standards (Dkt. Nos. 44-2 ¶¶ 9, 22, 35; 44-18 at 2-5). Plaintiff states that she did not attend the meeting because she was denied adequate notice of BCARC's and MassHealth's allegations, the opportunity to be heard, and representation by legal counsel (Dkt. No. 44-2 ¶¶ 19-24, 35). Plaintiff alleges that the lack of sufficient notice regarding the meeting further evinced Defendants' deprivation of her rights and their "continuing policy of retaliatory animus and discrimination" based upon her advocacy for F.L. and L.W. (*id.* ¶ 19).

L.W. was removed from Plaintiff's home on October 23, 2014 purportedly against her will and pursuant to a court order based on Plaintiff's alleged failure to comply with MassHealth's AFC regulations (Dkt. Nos. 44-2 ¶¶ 25, 33; 44-19 at 3). BCARC's final payment to Plaintiff was by check dated October 28, 2014 (Dkt. No. 44-21 at 3).

 III. ANALYSIS

As noted earlier, Defendants raise three grounds in opposition to Plaintiff's second motion to amend: (1) the failure to file the motion to amend on or before the date set by the

court's scheduling order; (2) the futility of the proposed amendments; and (3) the statute of limitations bar (Dkt. No. 46). Because the court finds that the motion to amend was timely filed, but the proposed amendments fail to state a viable claim, it addresses only the first two grounds.

> A. Plaintiff established good cause for filing the motion to amend three days beyond the date set by the scheduling order.

Defendants' first objection to Plaintiff's request for leave to file a second amended complaint alleges that Plaintiff's motion was filed late (Dkt. No. 46 at 2-3). Because Plaintiff established good cause for filing the motion to amend three days after the deadline set in the scheduling order, Defendants' position is a nonstarter.

On June 16, 2017, the court issued a scheduling order establishing August 15, 2017 as the deadline for seeking leave to amend the pleadings (Dkt. No. 36). *See* Fed. R. Civ. P. 16(b)(3)(A). On August 15, 2017, Plaintiff moved for leave to file a second amended complaint with two exhibits (Dkt. No. 40), and then moved to amend the exhibits to her proposed second amended complaint (Dkt. No. 41).[3] On August 16, 2017, the court denied, without prejudice, Plaintiff's two motions due to their failure to certify compliance with LR 7.1(a)(2), which requires counsel to "certify that they have conferred and have attempted in good faith to resolve or narrow the issue" (Dkt. Nos. 42, 43). LR 7.1(a)(2). Plaintiff's counsel indicated that the failure to comply with LR 7.1(a)(2) was "not intentional . . . but was simple, excusable error" (Dkt. No. 44 at 2). According to Plaintiff's counsel, he and Defendants' counsel briefly conferred on August 16, 2017 and engaged in a more extensive discussion late in the afternoon of the next

---

[3] Defendants claim that these pleadings were filed at 6:02 P.M. on August 15, 2017, and, therefore, were filed late (Dkt. No. 46 at 2-3). *See* LR 5.4(D) ("All electronic transmissions of documents must be completed prior to 6:00 p.m. to be considered timely filed that day."). However, the docket reflects filing on August 15, 2017 (Dkt. Nos. 40, 41).

day, but were unable to resolve or narrow the issues (Dkt. No. 44 at 2). Plaintiff's motion that complied with LR 7.1(a)(2) was filed the following day, August 18, 2018 (Dkt. No. 44).

"Rule 16(b) requires that the district court enter a scheduling order setting certain deadlines, including a deadline for the parties to amend the pleadings." *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013). *See* Fed. R. Civ. P. 16(b)(3)(A). "Those deadlines may be modified 'only for good cause and with the judge's consent.'" *Somascan, Inc.,* 714 F.3d at 64 (quoting Fed. R. Civ. P. 16(b)(4)). Although Plaintiff's motion that was filed on the deadline set by the scheduling order was defective for failing to comply with LR 7.1(a)(2), the court denied the motion without prejudice (Dkt. Nos. 42, 43). *See Direnzo Towing & Recovery, Inc. v. Owner-Operator Indep. Drivers Assoc., Inc.*, CIVIL ACTION NO. 4:16-10073, 2016 WL 9402847, at *1-2 (D. Mass. May 4, 2016) (denying without prejudice a motion to dismiss for failure to comply with LR 7.1(a)(2)). *Compare Maloney v. Town of Hinsdale,* Civil Action No. 11-11297-MAP, 2012 WL 4103909, at *2 (D. Mass. Aug. 10, 2012) ("a violation of . . . rule [7.1(a)(2)] does not *necessitate* summary denial.") (citing *Blanchard v. Swaine,* Civil No. 08-40073-FDS, 2010 WL 4922699, at *5 (D. Mass. Nov. 9, 2010)). The motion to amend that conformed to the rule was filed three days after the scheduling order deadline passed (Dkt. No. 44).

The law of this circuit "'clearly establishes that Rule 16(b)'s "good cause" standard, rather than Rule 15(a)'s "freely give[n]" standard, governs motions to amend filed after scheduling order deadlines'" have passed. *Flores–Silva v. McClintock-Hernández,* 710 F.3d 1, 3 (1st Cir. 2013) (quoting *Trans–Spec Truck Serv. v. Caterpillar Inc.,* 524 F.3d 315, 327 (1st Cir. 2008)). Rule 16's "'good cause' standard 'focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent.'" *Id.* (quoting *Steir v. Girl Scouts of*

9

*the USA,* 383 F.3d 7, 12 (1st Cir. 2004)). *See O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004) ("Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment."). Because Plaintiff's counsel has demonstrated the requisite diligence to establish good cause for the three day delay in filing a motion that complied with the local rule, the technical violation does not present a basis for denying Plaintiff's motion to amend.

      B.      Plaintiff's proposed second amended complaint fails to state a claim upon which relief can be granted.

Defendants fare better with their argument based on the futility of Plaintiff's proposal to add two conspiracy claims against BCARC and Defendants Singer, Hyatt, and Melski under 42 U.S.C. § 1985(3) and one conspiracy claim against all Defendants under Massachusetts law (Dkt. No. 44-1 ¶¶ 88-107).

    "Although Rule 15 proposes that leave to amend be 'freely give[n]' in instances in which 'justice so requires,' Fed R. Civ. P. 15(a)(2), this 'does not mean . . . that a trial court must mindlessly grant every request for leave to amend.'" *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 20 (1st Cir. 2017) (quoting *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006)). "Rather, 'a district court may deny leave to amend when the request is characterized by "undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part."'" *Id*. (quoting *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013)). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962). In the instant case, the focus is on whether Plaintiff's proposed amendments would be futile. *See Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) ("[F]utility is fully sufficient to justify the denial of a motion to amend."); *Correa–Martinez v. Arillaga-Belendez,* 903 F.2d 49, 59 (1st Cir. 1990), *overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61 (1st Cir. 2004) ("Where an amendment would be futile or would serve no legitimate purpose, the district court

should not needlessly prolong matters."). Where, as here, "leave to amend is sought before discovery is complete and neither party as moved for summary judgment . . ." the proposed amendment is measured against the plaintiff-favorable rule 12(b)(6) standard to determine whether or not "the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." *Hatch*, 274 F.3d at 19 (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). After applying this standard to each of Plaintiff's three proposed amendments, the court agrees with Defendants' contention that, as a matter of law, Plaintiff's proposed amendments fail to state a viable claim for relief (Dkt. No. 46 at 4). *See Glassman*, 90 F.3d at 623 (leave to amend should be denied as futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted.").

        1.      Proposed Count VII: Alleged intracorporate-conspiracy to deprive Plaintiff of rights under Title VII.

In proposed Count VII, Plaintiff, a female, alleges that 42 U.S.C. § 1985(3) entitles her to relief based on a conspiracy among BCARC and Defendants Singer, Hyatt, and Melski to deprive her of her rights under Title VII (Dkt. No. 44-1 ¶¶ 88-92). Plaintiff alleges that the conspiracy occurred at meetings when Defendants determined her rates of pay, which were purportedly less "than other employees of BCARC, Inc., and particularly . . . the rates of pay [of] male workers who perform[ed] similar duties and [had] similar responsibilities, though they [may] not [have] work[ed]" as AFC providers (Dkt. Nos. 44-1 ¶¶ 89, 90; 44-2 ¶ 17). Plaintiff also points to the "discriminatory effect" of Contract # 2's other terms as further proof of Defendants' gender-based conspiracy (Dkt. No. 44-1 ¶¶ 90-91).

"To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the

equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). *See Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971); *Williams v. Northfield Mount Hermon Sch.*, 504 F. Supp. 1319, 1327 (D. Mass. 1981). "In *Griffin,* the Supreme Court placed a gloss on these four elements, effectively adding a fifth requirement." *Aulson*, 83 F.3d at 3. "It construed the statute's references to 'equal protection' and 'equal privileges and immunities under the laws' to signify that a plaintiff may recover thereunder only when the conspiratorial conduct of which [s]he complains is propelled by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* (quoting *Griffin*, 403 U.S. at 102).

The Supreme Court's holding in *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979), dooms Plaintiff's proposed Title VII conspiracy claim. In *Novotny*, the Court "held that Section 1985(3) cannot be invoked to redress violations of Title VII." *Pierce v. Runyon*, 857 F. Supp. 129, 132 (D. Mass. 1994).

> In making this ruling, the Court reasoned that "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates. The primary question in the present case, therefore, is whether a person injured by a conspiracy to violate [Title VII] is deprived of 'the equal protection of the laws, or of equal privileges and immunities under the laws' within the meaning of § 1985(3)."

*Id. (*quoting *Novotny,* 442 U.S. at 372). The Court answered the question in the negative. *See Novotny*, 442 U.S. at 378 ("[D]eprivation of a right created by Title VII cannot be a basis for a cause of action under § 1985(3)."). "The Court also noted that if a violation of Title VII could be pursued through § 1985(3), a plaintiff could avoid most, if not all, of the elaborate judicial and administrative process 'which plays such a crucial role in the scheme established by Congress in Title VII.'" *Pierce,* 857 F. Supp. at 132 (quoting *Novotny*, 442 U.S. at 376). *See also Rice v.*

12

*New England Coll.*, 676 F.2d 9, 11 (1st Cir. 1982) ("Title VII rights cannot form the basis for a § 1985(3) action."); *Siupa v. Astra Tech, Inc.*, Civil Action No. 10-10525-LTS, 2013 WL 212613, at *3 (D. Mass. Jan. 18, 2013) (same).

Plaintiff "cannot assert a cause of action under § 1985(3) to redress violations of Title VII." *Pierce*, 857 F. Supp. at 132. Accordingly, the court denies Plaintiff's motion to amend the complaint to add proposed Count VII.

        2.        Proposed Count VIII: Alleged intracorporate-conspiracy to deprive Plaintiff of rights under the ADA.

For similar reasons, the court denies Plaintiff's motion for leave to add proposed Count VIII, which alleges that Defendants Singer, Hyatt, and Melski are liable under 42 U.S.C. § 1985(3) based on their alleged meeting to draft Contract # 2 (Dkt. No. 44-1 ¶¶ 94-97). Plaintiff alleges that Defendants' actions were taken in retaliation for her engagement in conduct protected by the ADA (*id.* ¶ 97).

As is the case with Title VII claims, the First Circuit has held that § 1985(3) does not provide a remedy for a claim of conspiracy to violate the ADA. *See Isaacs v. Trs. of Dartmouth Coll.*, Civil No. 17-cv-040-LM, 2017 WL 2982954, at *7 (D.N.H. July 12, 2017) (citing *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 44 (1st Cir. 2012)). *See also M.M.R.-Z. ex rel. Ramírez-Senda v. Puerto Rico*, 528 F.3d 9, 13 n.3 (1st Cir. 2008) ("Section 1983 cannot be used as a vehicle for ADA or other statutory claims that provide their own frameworks for damages."). *Compare Garity v. APWU Nat'l. Labor Org.*, 655 Fed. App'x 523, 526 (9th Cir. 2016) (unpublished) (parties agreed that § 1985(3) "'may not be invoked to redress violations' of anti-discrimination statutes like . . . the ADA.") (quoting *Novotny*, 442 U.S. at 378); *Doe v. U.S. Dep't of Veteran Affairs,* No. 08-14958-BC, 2009 WL 2023663, at *4 (E.D. Mich. July 7, 2009) (claims of age and disability discrimination "are not cognizable under 42 U.S.C. § 1985 because

a delineated avenue of relief is available under the ADEA and ADA"); *Medvey v. Oxford Health Plans,* 313 F. Supp. 2d 94, 100 (D. Conn. 2004) ("Section 1985(3) cannot be used to enforce statutes [like the ADA] which already provide[s] a mechanism for relief.").

Accordingly, because Count VIII of the proposed complaint fails to state a cognizable legal theory, Plaintiff's motion to amend is denied as to Count VIII.

        3.        Proposed Count IX: Alleged BCARC-Defendants' vicarious liability for common law civil conspiracy.

Plaintiff's final proposed amendment alleges a state common law claim for civil conspiracy. Plaintiff alleges that Defendants Singer, Hyatt, Melski, Anello, and Buchauer acted in concert with or "substantially assisted" one another or unidentified third parties in depriving Plaintiff of enumerated federal and state rights or in committing "tortious acts of interference, coercion, intimidation and in veiled or direct threats of [retaliation] against [Plaintiff], F.L. and L.W." (Dkt. No. 44-1 ¶¶ 100, 101). Plaintiff seeks vicarious liability for BCARC and liability for the other Defendants "to the extent of their illegal participation or assistance" in the alleged conspiracy and points to Contract # 2 as "express evidence" of the conspiracy (*id.* ¶¶ 103, 107). Defendants counter that there is no viable civil conspiracy claim "because . . . Defendants were all part of the same organization" that cannot conspire with itself (Dkt. No. 46 at 4). The court agrees with Defendants.

"Massachusetts recognizes two types of civil conspiracy, so-called 'true conspiracy' and conspiracy based on section 876 of the Restatement (Second) of Torts." *Taylor v. Am. Chemistry Council,* 576 F.3d 16, 34 (1st Cir. 2009) (citing *Kurker v. Hill*, 689 N.E.2d 833, 836 (Mass. App. Ct. 1998)). *See also Grant v. John Hancock Mut. Life Ins. Co.,* 183 F. Supp. 2d 344, 362–63 (D. Mass. 2002). "The 'true conspiracy' is a very limited cause of action that requires an element of coercion." *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 391 (D. Mass. 2012) (citing

*Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1563 (1st Cir. 1994)). Although Plaintiff's proposed second amended complaint fails to clearly specify the form of conspiracy alleged, Plaintiff cites cases that address the Restatement type and the proposed count references "vicarious liability" (Dkt. No. 44 ¶ 8; Dkt. No. 44-1 at 26 & ¶ 107). [4]

"A civil conspiracy claim, based on § 876 of the Restatement, is a form of vicarious liability that requires an underlying tort." *Blake*, 898 F. Supp. 2d at 391-92 (citing *Taylor*, 576 F.3d at 34-35). *See Aetna Cas. Sur. Co.*, 43 F.3d at 1564 ("[T]he concept is invoked to support liability of one person for a tort committed by another."). "Massachusetts courts have recognized two theories of liability under section 876: (1) 'concert of action,' and (2) 'substantial assistance' or 'aiding and abetting.'" *Taylor*, 576 F.3d at 35. Both theories require the plaintiff to "'show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement.'" *Boyle v. Barnstable Police Dept.*, Civil Action No 09-11435-MBB, 2012 WL 2126868, at *9 (D. Mass. June 11, 2012) (quoting *Bartle v. Berry*, 953 N.E.2d 243, 253 (Mass. App. Ct. 2011)). *See Aetna Cas. Sur. Co.*, 43 F.3d at 1564 ("For liability to attach [under the Restatement type of conspiracy], there must be, first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement.").

---

[4] The coercive type is "drawn from the common law [and] amounts to 'a very limited cause of action in Massachusetts' for civil conspiracy based on the defendants' allegedly unique ability to exert a '"peculiar power of coercion"' when acting in unison." *Snyder v. Collura,* 812 F.3d 46, 52 (1st Cir. 2016) (quoting *Jurgens v. Abraham,* 616 F. Supp. 1381, 1386 (D. Mass. 1985)). "[T]he 'wrong' suffered by the plaintiff is 'in the particular combination of the defendants rather than in the tortious nature of the underlying conduct.'" *Id.* (quoting *Kurker,* 689 N.E.2d at 836). To the extent Plaintiff's proposed second amended complaint can be read to allege that Defendants conspired to coerce her to sign Contract # 2, she did not sign it (Dkt. No. 44-2 ¶¶ 12, 71).

The complaint fails to state an actionable conspiracy claim because Plaintiff alleges that BCARC and its officers or employees acted as a single legal entity. *See Williams*, 504 F. Supp. at 1328-29. "Under this principle – sometimes called the intracorporate-conspiracy doctrine – an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769-71 (1984)). The doctrine developed from the requirement that a conspiracy necessarily involves more than one separate actor. *See id.; Boyle,* 2012 WL 2126868, at *9. "When two [or more] agents of the same legal entity make an agreement in the course of their official duties, . . . as a practical and legal matter their acts are attributed to their principal." *Ziglar,* 137 S. Ct. at 1867. Plaintiff does not allege that any of the five individual Defendants acted other than within the scope of their duties as officers, employees, or agents of BCARC when they allegedly conspired against her (Dkt. No. 44-1 ¶¶ 100-107). *See Wentworth Precious Metals, LLC v. City of Everett*, No. Civ.A. 11-10909-DPW, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) ("Even joining officers of a corporation . . . in their individual capacities 'is not enough to make them persons separate from the corporation in legal contemplation' if they are acting in the course of their employment.") (quoting *Williams,* 504 F. Supp. at 1328–29). Consequently, as a matter of law, the individual Defendants' acts are attributed to BCARC, which "cannot conspire with itself." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 131 (1st Cir. 2006). *See Williams,* 504 F. Supp. at 1328-29. *See also Ziglar*, 137 S. Ct. at 1867 ("The Court's precedent indicates that there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for

the entity.") (citing *Copperweld Corp.*, 467 U.S. at 769-71);[5] *Bell v. Rinchem Co.,* CIVIL ACTION NO. 4:14-40177-TSH, 2014 WL 11290899, at *17 (D. Mass. Mar. 10, 2016) (dismissing civil conspiracy claim alleging vicarious liability for employees acting within the scope of their employment); *Wentworth Precious Metals, LLC*, 2013 WL 441094, at *14 ("The conspiracy claim fails under both federal and state law for the independent reason that the City cannot conspire with itself. Plaintiff alleges that Field, Nuzzo, and Mayor DeMaria acted to enforce City ordinances, albeit unlawfully. When these employees acted in the course of their employment, they acted on behalf of the City of Everett, and a conspiracy of one fails to state a claim."); *Limone v. United States*, 336 F. Supp. 2d 18, 50 (D. Mass. 2004) ("Under the intercorporate [sic] conspiracy doctrine, a corporate officer cannot be held to conspire with his own corporation. The idea is that a corporation cannot conspire with its own employees insofar as they are acting for the corporation."); *Williams*, 504 F. Supp. at 1328 (actions of defendants undertaken in their official capacities "are properly attributed to the single entity Northfield Mount Hermon School, which clearly cannot conspire with itself.").

The two cases upon which Plaintiff relies to refute Defendants' argument that her claims are barred by the intracorporate-conspiracy doctrine are distinguishable (Dkt. No. 49 at 8-10). In *Stathos v. Bowden*, 728 F.2d 15 (1st Cir. 1984), the court upheld a jury's verdict finding that government officials were liable under § 1985(3) for conspiring to discriminate against the

---

[5] In *Ziglar*, the Court also noted that it "has not given its approval to [the intracorporate-conspiracy] doctrine in the specific context of § 1985(3)," that "[t]here is a division in the courts of appeals . . . respecting the validity or correctness of the intracorporate-conspiracy doctrine with reference to § 1985 conspiracies," and "[n]othing in this opinion should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application in the context of an alleged § 1985(3) violation." *Ziglar*, 137 S. Ct. at 1868. Here, the court's decision applies the intracorporate-conspiracy doctrine to a state law conspiracy claim, not to the § 1985(3) claims, which are not viable for the other reasons previously discussed.

plaintiffs based on their gender. *Id*. at 20-21. The court found that the intracorporate-conspiracy doctrine did not shield the defendants from liability because the officials' conduct "went beyond 'a single act' of discrimination." *Id.* at 21 (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)). Similarly, *Webb v. Cty. of El Dorado*, No. 2:15-cv-01189-KJM-EFB, 2016 WL 4001922 (E.D. Cal. July 26, 2016), addressed the viability of a § 1985(3) claim for gender discrimination against a governmental body where "the individual defendants met over several months and made various plans, taking action in some instances that did not require ratification by the County Board." *Id.* at *8. The court granted plaintiff leave to amend her complaint to provide additional allegations to support her claim of gender-based discrimination. *Id.* While courts of this circuit have applied an exception to the intracorporate-conspiracy doctrine to permit § 1985(3) liability for rights violations committed by officials in the public sector, *see, e.g., Stathos*, 728 F.2d at 20-21, here, on the other hand, Plaintiff alleges that agents of a private entity conspired against her in violation of Massachusetts common law. The intracorporate-conspiracy doctrine has been applied to bar claims in similar circumstances. *See Platten,* 437 F.3d at 131; *Bell*, 2014 WL 11290899, at *17; *Williams*, 504 F. Supp. at 1328-29.

Accordingly, Plaintiff's proposed Count IX fails as a matter of law and her motion to amend the complaint to add Count IX is denied.[6]

IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to file a second amended complaint (Dkt. No. 44) is DENIED. On or before **February 28, 2018**, Defendants should either

---

[6] Based on the court's finding that the proposed amendments would be futile, it is not required to address Defendants' argument that Plaintiff's motion to amend should be denied on the ground that the three year statute of limitations for conspiracy claims bars the proposed amendments (Dkt. No. 46 at 3-4). *See Nieves v. McSweeney*, 73 F. Supp. 2d 98, 102 & n.4 (Mass. 1999).

renew their motion to dismiss for failure to state a claim (Dkt. No. 23), which the court found was moot in light of Plaintiff's motion to file an amended complaint, or file a new motion to dismiss, or notify the court that they will not move to dismiss.

    It is so ordered.

Dated: February 15, 2018                                    /s/ Katherine A. Robertson
                                                                              KATHERINE A. ROBERTSON
                                                                              UNITED STATES MAGISTRATE JUDGE