UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HELENE E. HAGENAH, <br><br> Plaintiff <br><br> v. <br><br> BERKSHIRE COUNTY ARC, INC., <br> ET AL., <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 3:16-cv-30141-KAR <br> ) <br> ) <br> ) <br> ) <br> ) |

<u>MEMORANDUM OF DECISION AND ORDER REGARDING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND MOTION TO STRIKE</u>
(Dkt. No. 55)

ROBERTSON, U.S.M.J.

I. <u>INTRODUCTION</u>

On December 5, 2016, Plaintiff Helene E. Hagenah ("Plaintiff") filed an amended complaint against Defendants Berkshire County ARC, Inc. ("BCARC"), and BCARC officers and employees Kenneth W. Singer, Maryann T. Hyatt, Bernard C. Melski, Megan B. Anello, and Angela Buchauer (collectively "Defendants"), arising from Plaintiff's agreement with BCARC to provide foster care services to two disabled adults and BCARC's termination of Plaintiff's services (Dkt. No. 6). Plaintiff asserted the following causes of action in her amended complaint: interference and retaliation in violation of Titles III and V of the Americans with Disabilities Act ("ADA") (Count I); discrimination and retaliation under Mass. Gen. Laws ch. 151B, §§ 4, 4(A), and 5 ("Chapter 151B") (Count II); breach of contract (Count III); breach of the implied covenant of good faith and fair dealing (Count IV); misrepresentation (Count V); violations of Title VII of the Civil Rights Act of 1964 (Count VI); violations of the

1

Rehabilitation Act of 1973 (Count VII); and violations of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11I (Count VIII) (Dkt. No. 6).

Presently before the court is Defendants' partial motion to dismiss, seeking dismissal under Fed. R. Civ. P. 12(b)(6) of Counts V and VII and so much of Count VI as alleges the individual Defendants' liability (Dkt. No. 55). In addition, Defendants move to strike and to dismiss with prejudice so much of Count I as alleges a violation of Title III of the ADA (*id.*). Plaintiff claims that the complaint does not allege individual liability under Count VI, opposes Defendants' motion as to Counts V and VII, and offers no disagreement with Defendants' motion to strike and to dismiss with prejudice the portion of Count I that alleges a violation of Title III of the ADA (Dkt. No. 61).

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. After hearing the parties' arguments, the court ALLOWS Defendants' motion to dismiss in part, DENIES it in part, and ALLOWS Defendants' motion to strike for the reasons set forth below.

II.     BACKGROUND

Because this is a motion to dismiss, "the court accepts as true the well-pleaded factual allegations contained in the complaint, drawing reasonable inferences in the Plaintiffs' favor." *S. Commons Condo. Ass'n v. City of Springfield*, 967 F. Supp. 2d 457, 460 (D. Mass. 2013), *aff'd sub nom. S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82 (1st Cir. 2014). Applying this standard to the instant case, the relevant facts are as follows.

BCARC is a nonprofit agency that provides services to disabled individuals (Dkt. Nos. 6-1 ¶ 39; 6-4; 6-7 at 3, 4).[1] At the time of the events that form the basis of the amended complaint, the individual Defendants held the following positions with BCARC: Kenneth W. Singer was President, CEO, and Executive Director; Maryann T. Hyatt was Vice President of Community, Day, and Clinical Services; Bernard C. Melski was Co-Director of Residential Services; Megan B. Anello was an Adult Family Care Case Manager and Family Advocate; and Angela Buchauer was a registered nurse (Dkt. No. 6 ¶¶ 21-25).

On May 15, 2014, BCARC approved Plaintiff to be an Adult Family Care ("AFC") program caregiver for two developmentally and physically disabled adults ("participants"), F.L. and L.W., who would reside in her home (Dkt. Nos. 6-1 ¶¶ 5, 39, 42; 6-7 at 3, 4). BCARC administered the AFC program for MassHealth, the state agency that paid participating caregivers a per diem rate for services rendered to eligible MassHealth members based on the level of care they required (Dkt. No. 6-7 at 2). Because Level II participants required more intensive care than Level I participants, AFC providers received a higher per diem rate for Level II participants (*id.*). Both adults who resided with Plaintiff were designated Level I participants (*id.* at 3, 4). Plaintiff alleges that they should have been classified as Level II participants (Dkt. No. 6-1 ¶¶ 33, 74).

---

[1] Plaintiff's affidavit and attachments are incorporated by reference into the amended complaint (Dkt. No. 6 ¶ 26). Plaintiff's affidavit is referenced herein as "Dkt. No. 6-1 ¶ __." Plaintiff's opposition to the motion to dismiss sometimes references her affidavit that was incorporated by reference into her proposed second amended complaint and makes other references to the proposed second amended complaint (*see, e.g.,* Dkt. No. 61 at 1, 2 ¶ 2). Because the court denied Plaintiff's motion for leave to file a second amended complaint (Dkt. No. 53), the amended complaint and its attachments are the operative pleadings. *See Jefferson v. Pepin*, C.A. No. 16-016S, 2017 WL 5197880, at *6 (D.R.I. Jan. 26, 2017); *P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 104 F. Supp. 3d 196, 200 (D.P.R. 2015).

On May 29, 2014, Plaintiff, F.L., L.W., and Defendant Anello executed Adult Foster Participant and Caregiver Agreements (Contract # 1), which stated the responsibilities of Plaintiff, BCARC, and the participants (Dkt. No. 6-8 at 2-4). [2] As the caregiver, Plaintiff's charges included, but were not limited to: maintaining a safe residence that complied with all eligibility criteria; providing twenty-four hour supervision of the participants; supplying the participants with a "clean attractive room," fresh linens at least once a week, three nutritionally balanced meals daily, and snacks; supervising and assisting the participants with activities of daily living; arranging or providing the participants' transportation; and supervising health-related activities, such as reminding the participants to take their medication, refilling their medication on time, and assisting with their transportation to physicians' offices (*id.* at 3). BCARC's responsibilities included: visiting the participants monthly "to monitor health status, safety, and satisfaction with the placement;" checking on Plaintiff's performance of her responsibilities, ability to care for the participants, and satisfaction with the placements; annually assessing Plaintiff's home for "safety and comfort standards;" and developing, implementing, and updating, when necessary, a plan of care for each participant and including Plaintiff in the process (*id.* at 2). Each participant was responsible for, among other things, paying Plaintiff his or her share of the cost of room and board at the beginning of each month (*id.* at 3).

The amended complaint alleges various federal and state claims of discrimination based on Plaintiff's gender and advocacy for F.L. and L.W., plus contract-related claims. Mainly, Plaintiff alleges that Defendants retaliated against her for exercising rights protected by the ADA, the Rehabilitation Act, and Chapter 151B or for assisting the participants in exercising

---

[2] Although the May 2014 contract is referenced herein in the singular as Contract # 1, there was a separate contract for each participant.

their rights under the laws, and for refusing to sign new caregiver contracts in August 2014 ("Contract # 2") (Dkt. Nos. 6 ¶¶ 28, 29, 89-91; 6-1 ¶¶ 4, 12, 19, 43, 60).³ Plaintiff claims that her advocacy to BCARC and the Massachusetts Department of Developmental Services ("DDS") on behalf of F.L. and L.W. included seeking "changes" or "improvements" in F.L.'s and L.W.'s employment, day rehabilitation, and activity programs and additional services (Dkt. No. 6-1 ¶¶ 6, 7, 42, 43, 45, 47). She also sought behavioral counseling and treatment for the participants and a "*Rogers*"⁴ attorney for medication determination (*id.* ¶¶ 46, 52, 57, 115). In addition, Plaintiff recites a litany of ways in which she assisted F.L. and L.W. in protecting and enforcing their rights including: advocating for "reasonable accommodations to [their] respective disabilities," "timely delivery" of appropriate services and care and respect for their privacy; bringing acts of discrimination and abuse to the attention of state and federal agencies, including DDS, the Massachusetts Commission Against Discrimination ("MCAD"), and the Equal Employment Opportunity Commission ("EEOC"); assisting F.L. and L.W. in appealing determinations made in their care plans and individual service plans; and affording them an opportunity to consult with legal counsel (*id.* ¶¶ 8, 44, 48, 50, 55, 56, 58, 60).

Plaintiff alleges that Defendants presented her with Contract # 2 on or about August 5, 2014 in retaliation for her "proper," "effective," and "steadfast" advocacy on behalf of F.L. and L.W. (Dkt. Nos. 6-1 ¶¶ 65, 66; 6-10). Plaintiff claims that Contract # 2 -- which significantly differed from the Contract # 1 and which she refused to sign -- eliminated her rights as well as

---

³ As was the case with the May 2014 contracts, there was a separate proposed contract in August 2014 for each participant.

⁴ "[I]f a patient is declared incompetent, a court must make the original substituted judgment treatment decision and should approve a substituted judgment treatment plan." *Rogers v. Comm'r of the Dep't of Mental Health*, 458 N.E.2d 308, 318 (Mass. 1983).

those of F.L. and L.W. by permitting home visits "with or without notice," releasing BCARC from liability for specific losses, establishing her status as an independent contractor, permitting BCARC to terminate the contract "with or without cause, any time, in its sole discretion," and limiting commencement of any legal action under the contract to either the Central Berkshire District Court or the Berkshire Superior Court (Dkt. Nos. 6-1 ¶¶ 12, 13, 61, 67, 71; 6-10 at 4-5).

Plaintiff alleges that her refusal to sign Contract # 2 spurred Defendants' further acts of retaliation, threats, intimidation, and coercion (Dkt. No. 6-1 ¶12). Specifically, Defendant Anello's August 11, 2014 e-mail message indicated that BCARC "was unable to begin issuing . . . checks" until Plaintiff signed Contract # 2 (Dkt. Nos. 6-1 ¶¶ 70, 72; 6-11 at 9). Plaintiff alleges that, in fact, payments were withheld until her attorney contacted Defendants regarding the "egregious, rights violating terms" of Contract # 2 (Dkt. No. 6-1 ¶ 62). Thereafter, Defendants purportedly delayed making payments to Plaintiff, withheld F.L.'s and L.W.'s stipends, which they used to pay Plaintiff for their room and board, continued to "intentionally" incorrectly classify F.L. and L.W. as Level I participants resulting in Plaintiff being underpaid, and made false reports to MassHealth and DDS including allegations that Plaintiff provided subpar care to F.L. and L.W. and that she failed to pay the real estate taxes on her home (*id.* ¶¶ 11, 12, 25, 32, 33, 63, 72, 74). Plaintiff further alleges that Defendants disqualified her home as an AFC placement for L.W. based on the alleged danger posed by a railing on a balcony and stairway, which was one-half inch lower than the building code requirements and which MassHealth and DDS previously had approved (*id.* ¶¶ 25, 31, 33).

Plaintiff maintains that Defendants' acts of retribution culminated in them terminating F.L.'s and L.W.'s occupancy of Plaintiff's home thereby stopping payments to Plaintiff and ending her role as an AFC provider (*id.* ¶¶ 25, 33, 101-03). Defendants allegedly instigated

F.L.'s departure from Plaintiff's home on September 24, 2014 by telling him that he would not have to work or attend a day program and could just "'hang out'" and go fishing every day (Dkt. Nos. 6-1 ¶¶ 5, 101, 102, 115; 6-20 at 5). Plaintiff claims that these representations "encouraged and enabled" F.L.'s disruptive and threatening behavior that resulted in F.L. asking to move out "more than eight times" in one night (Dkt. No. 6-1 ¶¶ 99, 101-03). Plaintiff further alleges that after F.L. moved from her home, Defendants ignored his requests to move back, threatened to stop caring for him if he contacted Plaintiff or his attorney, and "forced [him] to sign papers" (*id.* ¶¶ 5, 97, 104, 111, 112, 115).

On Friday, October 17, 2014, Defendant Hyatt notified Plaintiff of a meeting scheduled for Monday, October 20, 2014 to discuss Plaintiff's continued role as the AFC provider for L.W. as well as the "appropriateness" of Plaintiff's home as L.W.'s placement based on MassHealth's determination that the height of a railing failed to comply with its safety standards (Dkt. Nos. 6-1 ¶¶ 9, 22, 35; 6-17 at 2-5). Plaintiff states that she did not attend the meeting because she was denied adequate notice of BCARC's and MassHealth's allegations, the opportunity to be heard, and representation by legal counsel (Dkt. No. 6-1 ¶¶ 19-24, 35). Plaintiff alleges that the lack of sufficient notice regarding the meeting further evinced Defendants' deprivation of her rights and their "continuing policy of retaliatory animus and discrimination" based upon her advocacy for F.L. and L.W. (*id.* ¶ 19).

L.W. was removed from Plaintiff's home on October 23, 2014 purportedly against her will and pursuant to a court order based on Plaintiff's alleged failure to comply with MassHealth's AFC regulations (Dkt. Nos. 6-1 ¶¶ 25, 33; 6-18 at 3). BCARC's final payment to Plaintiff was by check dated October 28, 2014 (Dkt. No. 6-20 at 3).

III. ANALYSIS

7

A. Standard of Review

Defendants have moved under Fed. R. Civ. P. 12(b)(6) for dismissal of Counts V and VII, so much of Count VI as alleges personal liability under Title VII, and so much of Count I as alleges a violation of Title III of the ADA (Dkt. No. 55). "Motions to dismiss under Rule 12(b)(6) . . . test the sufficiency of the pleadings." *Hagenah v. Cmty. Enters., Inc.*, Case No. 15-cv-30036-KAR, 2016 WL 1170963, at *3 (D. Mass. Mar. 23, 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to '"state a claim [for] relief that is plausible on its face."' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility does not demand a showing that the claim is likely to succeed. It does, however, demand a showing of 'more than a sheer possibility' of success." *Butler v. Balolia*, 736 F.3d 609, 616 (1st Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678). In order to meet the plausibility standard, "[t]he plaintiff must proffer more than mere 'labels and conclusions' or 'naked assertions devoid of further factual enhancement.'" *Garrity, Levin & Muir, LLP v. United States*, CIVIL ACTION NO. 15-11405-RGS, 2015 WL 6126816, at *2 (D. Mass. Oct. 16, 2015) (quoting *Iqbal*, 556 U.S. at 678). "Dismissal is appropriate if the complaint does not set forth '"factual allegations, either direct or inferential, respecting each element necessary to sustain recovery under some actionable legal theory."'" *S. Commons Condo. Ass'n*, 967 F. Supp. 2d at 463 (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 6 (1st Cir. 2005)). The court addresses Defendants' claims sequentially.

B. Motion to Strike Count I: Claim for Violation of Title III of the ADA

Plaintiff's failure to respond to Defendants' motion to strike and to dismiss with prejudice so much of Count I as alleges a violation of Title III of the ADA apparently recognizes the merit of Defendants' argument. Title III of the ADA provides:

> (a). **General Rule.** No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). "Title III addresses discrimination on the basis of disability by places of public accommodation." *Hagenah,* 2016 WL 1170963, at *3. Because the complaint fails to adequately allege that Defendants operate a place of "public accommodation" as that term is defined in 42 U.S.C. § 12181(7), Defendants' motion to strike so much of Count I as alleges a violation of Title III of the ADA is allowed and so much of Count I as alleges a violation of Title III is dismissed with prejudice (*see* Dkt. No. 6 ¶ 34).

C.  Motion to Dismiss Count V: Claim for Intentional Misrepresentation

Plaintiff's amended complaint makes two misrepresentation claims: (1) BCARC and the individual defendants intentionally misrepresented F.L.'s and L.W.'s levels of disability in Contract # 1 so that Plaintiff would accept payments lower than the amounts she was due for the services she provided; and (2) BCARC and the individual defendants orally misrepresented the terms of Contract # 2 to induce Plaintiff to sign it (Dkt. No. 6 ¶¶ 55, 59-71; Dkt. No. 6-1 ¶ 74). Defendants allege that Plaintiff has failed to comply with the procedural rules that demand particularity in pleadings alleging misrepresentation and, even if the complaint complies with the rules, Plaintiff's failure to sign Contract # 2 precludes liability for misrepresentation as to that claim as a matter of law. The court is not persuaded by Defendants' argument regarding Contract # 1, but their contention concerning Contract # 2 is convincing.

To state an intentional misrepresentation claim under Massachusetts law, a plaintiff must allege that: "(1) the defendant made a false representation of material fact; (2) the defendant knew the representation was false; (3) the purpose of the representation was to induce the plaintiff to act on the false representation; and (4) the plaintiff relied on the representation to his or her detriment." *4 MVR, LLC v. Warren W. Hill Const. Co.*, Civil Action No. 12-10674-DJC, 2013 WL 310290, at *4 (D. Mass. Jan. 25, 2013). *See also Taylor v. Am. Chemistry Council,* 576 F.3d 16, 31 (1st Cir. 2009); *Danca v. Taunton Sav. Bank*, 429 N.E.2d 1129, 1133 (Mass. 1982). A claim for misrepresentation must be pled with particularity. *See* Fed. R. Civ. P. 9(b). Under this rule, "a claim based on [misrepresentation] must state with particularity what the underlying misrepresentation was, who made it, and when and where it was made." *Robinson v. Spencer Stuart, Inc.*, Civil Action No. 13-10278-RWZ, 2013 WL 3989672, *9 (D. Mass. Aug. 5, 2013). *See Alt. Sys. Concepts v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). "The purpose of Rule 9(b)'s requirement that plaintiffs plead fraud claims with particularity is '(1) to give the defendants notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard defendants from frivolous charges that might damage their reputations.'" *4 MVR, LLC*, 2013 WL 310290, at *4 (quoting *Laverty v. Massad*, Civil Action No. 08-40126-FDS, 2009 WL 1873646, at *4 (D. Mass. Mar. 10, 2009)).

1. Contract # 1 (May 2014)

The complaint alleges that "the [individual] defendants and BCARC" made the misrepresentations "at the time that [D]efendants discussed and then prepared, executed and delivered the [May 2014] contracts and payment agreements . . . and on the dates and times that such agreements were signed by BCARC or its representatives, agents, employees, managers or

directors" (Dkt. No. 6 ¶ 60). The complaint continues by describing the "specific material misrepresentations" as F.L's and L.W.'s disability being Level I, "when in fact [D]efendants . . . knew or should have known that F.L. and L.W. were both Level II disabled persons for purposes of classifying them for needs and benefits under the [AFC] program . . . ." (*id.* ¶ 61). Defendants argue that the complaint fails to allege the "'who, what, where, and when' of the alleged misrepresentations" with the requisite specificity to satisfy the requirements of rule 9(b) (Dkt. No. 56 at 4-5). The court disagrees.

The complaint and the materials referenced and incorporated therein adequately allege a claim for misrepresentation. The letter of November 2006 from MassHealth to "Adult Foster Care Providers Participating in MassHealth," such as BCARC, states the per diem rate for providing services to Level II participants effective December 1, 2006 and indicates that the Level II payment rates reflect "a more intensive level of care provided to eligible MassHealth members who require a higher level of care" (Dkt. No. 6-7 at 2). Before December 1, 2006, MassHealth paid the lower Level I rate to all AFC providers (*id.*). The letter further states that "the applicable payment rate for each member must be [determined] upon admission . . . ." (*id.*). The letters of May 15, 2014 to Plaintiff from Amy Robandt, BCARC's Director of Family Services, say that Plaintiff was approved as the AFC caregiver for F.L. and L.W. who were admitted as Level I participants in the AFC program that BCARC administered for MassHealth (*id.* at 3, 4). Thereafter, on May 29, 2014, Plaintiff, Defendant Anello, and F.L. and L.W. executed Adult Foster Participant and Caregiver Agreements (Contract # 1) for each participant (Dkt. No. 6-8). The complaint and the incorporated documents provide adequate notice that Plaintiff, who became aware of F.L. and L.W.'s disability levels when she provided services to them in her home, is claiming that BCARC, through its employee Robandt, misrepresented the

11

severity of the participants' disabilities in the letters of May 15, 2014. *See Robinson*, 2013 WL 3989672, at *9. This misrepresentation allegedly induced Plaintiff to enter into Contract # 1 for their care at a per diem rate that was too low thereby depriving her of income. *See 4 MVR, LLC*, 2013 WL 310290, at *4. Accordingly, Defendants' motion to dismiss so much of Count V as it relates to Contract # 1 is denied.

2. Contract # 2 (August 2014)

Defendants' second claim, based on Contract # 2, stands on a different footing and should be dismissed because Plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Defendants correctly point out that Plaintiff did not allege facts to support the reliance element of a viable claim for misrepresentation (Dkt. No. 56 at 5).

Plaintiff focuses on Anello's alleged misrepresentations concerning the provisions of Contract # 2. However, "there can be no actionable claim [for misrepresentation] unless some cognizable harm flowed from the defendant's conduct." *Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991). To the extent the complaint adequately alleges Defendants' misrepresentations regarding the terms of Contract # 2, Plaintiff did not rely on these representations to her detriment because, by refusing to sign the contract, she did not accept its terms, and, therefore, did not suffer harm from the alleged misrepresentation (Dkt. No. 6 ¶ 66).

It is axiomatic that a contract requires a "meeting of the minds." *O'Rourke v. Jason Inc.*, 978 F. Supp. 41, 45 (D. Mass. 1997). "The essential elements of a valid contract are an offer, an acceptance, and consideration." *Conte v. Bank of Am., N.A.*, 52 F. Supp. 3d 265, 268 (D. Mass. 2014) (citing *Vadnais v. NSK Steering Sys. Am., Inc.*, 675 F. Supp. 2d 205, 207 (D. Mass. 2009)). There is no dispute that Plaintiff did not accept Contract # 2. *See also* Dkt. 6-1 ¶¶ 66, 71 (Plaintiff's declaration that she would never sign the second contract "with the provisions it

contained"). Consequently, she was not subject to, and harmed by, the provisions that she claims Anello falsely described. *See Chedd–Angier Prod. Co. v. Omni Publ'ns Internat'l, Ltd.,* 756 F.2d 930, 938-39 (1st Cir. 1985) (no fraud where parties had agreed to enter into a contract but settlement of contract terms were unresolved and no contract was consummated); *Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404, 425 (D. Mass. 1995) ("'Until all essential terms are settled, it cannot reasonably be said that there is a meaningful intention which can be misrepresented.'") (quoting *Saxon Theatre Corp. of Bos. v. Sage,* 200 N.E.2d 241, 245 (Mass. 1964)).

Dismissal is warranted for the portion of Count V that alleges Defendants' liability for misrepresenting Contract # 2.

D. Motion to Dismiss Count VI: Individual Liability for Violating Title VII

Defendants request dismissal of so much of Count VI as alleges that the BCARC employee/Defendants are individually liable for violating Title VII (Dkt. No. 56 at 5-6). Plaintiff avers that the complaint did not allege individual liability (Dkt No. 61 ¶¶ 43, 44). Because "there is no individual employee liability under Title VII," *Fantini v. Salem State Coll.*, 557 F.3d 22, 30 (1st Cir. 2009), to the extent Count VI can be read to seek the imposition of personal liability, Count VI is dismissed with prejudice as to the individual BCARC employees. *See also Hagenah,* 2016 WL 1170963, at *3.

E. Motion to Dismiss Count VII: Retaliation under the Rehabilitation Act

In Count VII, Plaintiff claims that Defendants violated Section 504 of the Rehabilitation Act by retaliating against her for complaining about their unlawful discrimination against F.L. and L.W. (Dkt. No. 6 ¶¶ 88-92). BCARC asserts two grounds for dismissal of this count: (1) Plaintiff is not disabled and, therefore, lacks standing to assert a claim under the Rehabilitation

Act; and (2) to the extent Plaintiff has standing based on her advocacy for the disabled individuals, the complaint is deficient because it fails to allege "prohibited discrimination" against F.L. and L.W. and an injury to Plaintiff that was "causally related to discrimination against [the] disabled individuals" (Dkt. No. 56 at 8). Although Plaintiff is not disabled, her complaint, fairly read, is sufficient to establish the elements of a Rehabilitation Act retaliation claim.

Plaintiff has standing to sue for retaliation notwithstanding the fact that she is not disabled. Section 504 of the Rehabilitation Act says, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (codifying Section 504). "[T]he Rehabilitation Act, through its implementing regulation[], *see* 28 C.F.R. § 42.503(b)(1)(vii), . . . prohibit[s] retaliation against *any person, whether disabled or not*, for opposing disability-based discrimination made unlawful by th[at] statute[]."[5] *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 40 (1st Cir. 2012) (emphasis added). *See Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 48 (1st Cir. 2000) ("Consistent with the broad construction of the statutory enforcement language of . . . the Rehabilitation Act, the anti-retaliation regulation applies to 'any individual' who has been intimidated, threatened, coerced, or discriminated against 'for the purpose of interfering with [protected rights]' under . . . the Rehabilitation Act.") (alteration in original) (quoting 34 C.F.R. § 100.7(e)) (citing 34 C.F.R. § 104.61).

---

[5] Section 42.503(b)(1)(vii) prohibits "any program or activity receiving Federal financial assistance" from discriminating on the basis of handicap by "[i]ntimidat[ing] or retaliate[ing] against any individual, whether handicapped or not, for the purpose of interfering with any right secured by section 504 or this subpart." 28 C.F.R. § 42.503(b)(1)(vii).

The First Circuit and other courts have afforded standing to non-disabled persons who, like Plaintiff, have brought retaliation claims that arose from their assertion of disabled individuals' rights. *See Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 823-25 (9th Cir. 2009) (a special education teacher had standing to sue under Section 504 based on the defendant's retaliation against her for attempting to protect the rights of her disabled students); *Weber*, 212 F.3d at 48-49 (a special education student's mother, who attempted to enforce her child's rights, had standing to pursue a retaliation claim under Section 504 of the Rehabilitation Act); *Hoyt v. St. Mary's Rehab. Ctr.,* 711 F.2d 864, 867 (8th Cir. 1983) ("[R]etaliation against persons who make complaints under § 504 is actionable."); *Sturm v. Rocky Hill Bd. of Educ.,* No. 3:03CV666AWT, 2005 WL 733778, at *3 (D. Conn. Mar. 29, 2005) ("Courts have extended protection against retaliation under the Rehabilitation Act to those who advocate on behalf of the disabled."); *Duffey v. Or. Youth Auth.,* No. Civ. 03-6013-TC, 2003 WL 23979013, at *1-2 (D. Or. Apr. 17, 2003) (a teacher at a secure residential facility, who was retaliated against after she "complained of deficiencies in the services given to disabled . . . students," had standing to bring a claim under the Rehabilitation Act); *Lindgren v. Camphill Vill. Minn., Inc.*, No. Civ.00-2771 RHK/RLE, 2002 WL 1332796, at *11 (D. Minn. June 13, 2002) ("[T]he Rehabilitation Act provides protection for an individual who makes a complaint, testifies about, or assists or participates in an investigation *of an action that violates one of the subchapters of the Rehabilitation Act* (i.e., engages in 'protected activity).'"); *Davis v. Flexman*, 109 F. Supp. 2d 776, 801-02 & n.26 (S.D. Ohio 1999) (a counselor at a clinic had standing to bring a claim of retaliation under the Rehabilitation Act based on defendants' termination of her "'affiliate agreement'" with the clinic after she persistently advocated for a sign language interpreter for a hearing impaired client); *Whitehead v. Sch. Bd. for Hillsborough Cty.,* 918 F. Supp. 1515, 1522

(M.D. Fla. 1996) ("Under the regulation, retaliatory acts are prohibited against persons who complain of unlawful discrimination in violation of § 504 on behalf of a handicapped individual. There is no limitation under the regulation that retaliatory acts are only prohibited against the handicapped individual on whose behalf the § 504 complaint is being raised. Therefore, persons who claim to suffer from retaliation do not need to show that they are an 'otherwise qualified handicapped individual' as required under § 504 for a claim of unlawful discrimination because of a handicap.") (quoting 29 U.S.C. § 794).

The court agrees with Defendants' assertion that, in order to raise a discrimination claim under Section 504 of the Rehabilitation Act, a plaintiff must allege more than mere association with a disabled individual. *See* Dkt. No. 56 at 7-8 (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279 (2d Cir. 2009) (Wesley, J., concurring) ("[T]o gain entry to the courts, non-disabled parties bringing associational discrimination claims need only prove an independent injury causally related to the denial of federally required services to the disabled persons with whom the non-disabled plaintiffs are associated."); *Hooker v. Dall. Indep. Sch. Dist.,* Civil Action No. 3:09-CV-1289-D, 2010 WL 4025877, at *4 (N.D. Tex. Oct. 13, 2010) ("To establish standing based on violations of [the child's] rights under the . . . Rehabilitation Act, [plaintiffs'] injuries must be independent of [the child's] injuries and must be causally related to the denial of federally-required services to [the child].")).

> To establish a prima facie claim for retaliation under . . . the Rehabilitation Act, [plaintiff has to] show that [she] "engaged in protected conduct," [was] "subjected to an adverse action by the defendant," and "there was a causal connection between the protected conduct and the adverse action."

*Lebrón v. Puerto Rico*, 770 F.3d 25, 31 (1st Cir. 2014) (footnote omitted) (quoting *D.B. ex rel. Elizabeth B.*, 675 F.3d at 41). *See also Smith v. Pub. Sch. of Northborough-Southborough*, 133 F. Supp. 3d 289, 294 (D. Mass. 2015).

Despite the absence of many particulars regarding the protected activities in which Plaintiff engaged, when the facts in the amended complaint are viewed through the plaintiff-friendly lens applicable to dismissal motions and when all reasonable inferences are drawn in Plaintiff's favor, the amended complaint sets forth a viable claim for retaliation under the Rehabilitation Act, albeit barely. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 17 (1st Cir. 2011). The Rehabilitation Act prohibits "discrimination against a disabled person on the basis of his or her disability." *D.B. ex rel. Elizabeth B.*, 675 F.3d at 39. *See Weber*, 212 F.3d at 47; 29 U.S.C. § 794(a)(2). There is no dispute that BCARC and Defendants provided employment, day rehabilitation, activity programs, and other services to disabled individuals, including F.L. and L.W. (Dkt. Nos. 6 ¶ 5; 6-1 ¶¶ 39, 42). Plaintiff avers that she engaged in protected activity by advocating for "changes or improvements" in the services Defendants provided to F.L. and L.W. (Dkt. No. 6-1 ¶¶ 6, 7, 26, 39, 42-43, 55). "It is clear from the case law that protected activity does not include mere assistance of [disabled individuals], but, rather, requires affirmative action in advocating for, or protesting discrimination related to, unlawful conduct by others." *Walker v. District of Columbia*, 279 F. Supp. 3d 246, 272 (D.D.C. 2017) (citing *Montanye v. Wissahickon Sch. Dist.*, 218 F. App'x 126, 131 (3rd Cir. 2007)). Here, Plaintiff alleges that she pressed for revisions of F.L.'s and L.W.'s employment situations and day rehabilitation programs, championed their exposure to "generally intellectually stimulating and enriching activity programs," requested reasonable accommodations to their disabilities, and advocated for their participation in "behavioral counseling and treatment in lieu of excessive psychotropic medications" (Dkt. No. 6-1 ¶¶ 6, 7, 8, 43, 44-47, 66). In addition, Plaintiff allegedly assisted them in bringing complaints "under the applicable laws . . . to protect their rights as disabled persons" and provided them with opportunities to consult with legal counsel to

enforce their rights (*id.* ¶¶ 6, 7, 8, 44). Reading the complaint and Plaintiff's incorporated affidavit indulgently at this stage of the litigation as is required, it is reasonable to infer that Plaintiff engaged in protected conduct. *See Smith,* 133 F.3d at 294 (special education teacher, who experienced retaliation because she "advocated for disabled students who were not receiving the education services to which they were [legally] entitled . . ." met her burden to prove a prima facie case of retaliation under the Rehabilitation Act); *Duffey,* 2003 WL 23979013, at *1-2 (teacher's suit for retaliation arising from her complaints about the deficient services afforded to her disabled students at a secure residential facility survived a motion to dismiss).

Plaintiff's complaint adequately pleads the remaining two elements of the retaliation claim. Defendants purportedly took adverse actions against her for attempting to enforce the disabled individuals' rights. *See Lebrón,* 770 F.3d at 31. "An adverse action is one that might well dissuade a reasonable person from making or supporting a charge of discrimination." *D.B. ex rel. Elizabeth B.*, 675 F.3d at 41. Defendants allegedly made false reports to MassHealth and DDS about the unsuitability of Plaintiff's home and the inadequate services she provided to F.L. and L.W. (Dkt. No. 6-1 ¶¶ 11, 25, 31, 32, 33). According to Plaintiff, Defendants failed to give her adequate notice of a meeting about L.W.'s continued placement in her home (*id.* ¶ 19). In addition, Defendants pressed her to sign Contract # 2, which, she claims, significantly altered her rights (*id.* ¶¶ 12, 65-67). When Plaintiff refused to sign, Defendants delayed or withheld their payments to her (*id.* ¶¶ 62-64, 70, 72). Ultimately, Defendants terminated Plaintiff as an AFC provider by allegedly removing F.L. and L.W. from her home thereby causing her loss of income (*id.* ¶¶ 12, 25, 32, 33, 101-03, 108). *See D.B. ex rel. Elizabeth B.,* 675 F.3d at 41-42 (describing the school system's alleged retaliatory actions against the parents of a disabled student who

18

advocated for their child, including failing to given them sufficient notice of a meeting regarding their child's individual education plan); *Davis*, 109 F. Supp. at 800-02 (plaintiff's agreement with a clinic was terminated after she made numerous complaints about the lack of a sign language interpreter for a hearing impaired client). The fact that Defendants' retaliatory actions all occurred from the time Plaintiff became an AFC provider until her position was terminated five months later lends support to Plaintiff's allegation of retaliation for her protected conduct. *See D.B. ex rel. Elizabeth B.*, 675 F.3d at 42 ("[C]lose temporal proximity between protected conduct and an adverse action sometimes 'may suffice for a prima facie case of retaliation.'") (quoting *Carreras v. Sajo, García & Partners,* 596 F.3d 25, 38 (1st Cir. 2010)).

Accordingly, Defendants are not entitled to dismissal of Count VII.

IV. CONCLUSION

For the above-stated reasons, Defendants' motion to dismiss (Dkt. No. 55) is ALLOWED as to so much of Count V as alleges misrepresentation regarding Contract # 2 and as to so much of Count VI as alleges individual liability on the part of the individual Defendants. The motion is DENIED as to so much of Count VI as alleges misrepresentation regarding Contract # 1 and as to Count VII. Defendants' motion to strike so much of Count I as alleges a violation of Title III of the ADA is ALLOWED and that portion of Count I is dismissed with prejudice.

It is so ordered.

Dated: April 16, 2018  /s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE